[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case involves a dispute between a homeowner, the plaintiff Charles Kogan, and his general contractor, the defendant W W Construction, Inc., which was tried to the court. The plaintiff claims that he paid an excessive amount to the defendant, and he seeks a refund. The defendant filed a counterclaim in which it contends that there is a balance due for remodeling work performed on plaintiff's home on Steep Hollow Lane in the Cos Cob section of Greenwich.
The parties signed a time and materials contract which contained a project description indicating "[a]ddition of Dinette, New Bath, New Furnace Room and alteration of a Hall. Work to be done according to plans furnished by owner." This contract was modified by a letter agreement dated February 21, 1988, that was signed by both parties, and referred to an estimated value of the work to be performed by the defendant on the plaintiff's home as "about $76,000." The agreement further provided that "[y]ou, the Contractor, will make every effort to keep the total cost of this project at or under the estimate. However, in no event will this contract exceed $95,000 without mutual agreement to a change in writing."
During the course of construction, the plaintiff made a number of payments to the defendant which totalled $134,365. The plaintiff also paid the sum of $12,000 directly to the electrical subcontractor. Hence, the plaintiff seeks a refund of $51,365, the difference between the amount he paid to the defendant and the $95,000 cap provided for in the February 21, 1988 agreement. The plaintiff's complaint contained a number of CT Page 11503 counts, but the plaintiff withdrew the fifth, sixth and eight counts, which alleged violations of General Statutes § 42-135a, the Home Solicitation Sales Act, and General Statutes § 42-110a, the Connecticut Unfair Trade Practices Act (CUTPA), and it was further agreed by the parties that General Statutes § 20-418, the Home Improvement Act, was not applicable to this controversy. Although the remaining counts contain a variety of causes of action, the plaintiff claims a refund of all sums paid to the defendant over and above the $95,000 cap, basically under theories of breach of contract and unjust enrichment. The defendant alleges in its counterclaim that it is owed a balance of $10,000.
The issue in this case is whether the $95,000 cap was amended or altered by the parties or whether it is binding on plaintiff and defendant. If binding, the plaintiff is entitled to a refund of sums paid over this amount. If the cap is not binding, then the plaintiff may not recover the amount sought from the defendant. The resolution of this issue necessarily focuses on a meeting between the parties on December 19, 1988. Prior thereto the defendant submitted an invoice to the plaintiff dated November 15, 1988, indicating a balance due of $51,800. At that point, the plaintiff had paid to the defendant approximately $93,000. The defendant presented to the plaintiff at that meeting a breakdown of its costs for material and time spent by carpenters and other artisans. The plaintiff initialed this document and voluntarily paid the defendant the sum of $41,800, which is the approximate amount of the refund sought by the plaintiff, excluding the direct payment to the electrical subcontractor, for a total payment of $134,365.
The other key to resolving this controversy is to compare the scope of the work as set forth in the contract and plans to the work actually performed by the defendant. The contract and plans called for the defendant to perform four tasks: the addition of a dinette, a new bath, a new furnace room, and the alteration of a hall. However, at the December, 1988 meeting, the defendant presented to the plaintiff a breakdown of its time and materials spent on projects other than the four tasks specified in the contract and plans. This breakdown indicated that the defendant had performed work on a new roof, a new deck, and the renovation of a kitchen. These items constitute extras, that were not included in the description of the work to be performed. In addition, this work was requested by the plaintiff and accepted by him knowing that the cap had been exceeded. It CT Page 11504 follows therefore that the defendant was justified in increasing the cap because the cap only pertained to four specific tasks according to the contract. In addition, the plaintiff initialed the breakdown, thereby satisfying the provision in the contract that the $95,000 cap could not be altered except in writing. Furthermore, the plaintiff testified at the trial that he paid the defendant this sum of $41,800 because he thought that the defendant had "acted properly" and had not "overcharged" him.
The court concludes that the plaintiff is not entitled to a refund because he voluntarily paid $41,800 at the December, 1988 meeting, and he would be unjustly enriched if he received both the benefit of the work performed by the defendant and a refund of the money that he paid to the defendant over and above the $95,000 cap. The essential elements of unjust enrichment are: (1) that a benefit has been conferred upon the party that is alleged to have been unjustly enriched; (2) that the party unjustly did not pay for the benefit; and (3) that the failure of payment was to the detriment of the party providing the benefit. Polverari v. Peatt, 29 Conn. App. 191, 200-01,614 A.2d 484 (1992); see also CBS Surgical Group, Inc. v. Holt,37 Conn. Sup. 555, 557-58, 426 A.2d 819 (App. Sess. 1981) ("`[a] right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another'").
With respect to defendant's counterclaim for $10,000 under the theories of unjust enrichment and quantum meruit, it is the court's opinion that the parties at the December, 1988 meeting agreed in essence that the plaintiff would pay the defendant $41,800 in full settlement of their dispute, and that the total project cost would therefore be $134,366, and not $144,366 as claimed by defendant. The defendant has not sustained its burden of proof as to its counterclaim because at that meeting it accepted a check for $41,800 from the plaintiff and is therefore not entitled to any additional money at this time.
Therefore, judgment enters in favor of the defendant with respect to the plaintiff's complaint, and judgment enters in favor of the plaintiff as to the defendant's counterclaim. No costs are to be taxed.
So Ordered. CT Page 11505
Dated at Stamford, Connecticut, this 16th day of November, 1994.
William B. Lewis, Judge